UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TELEQO TECHNICAL SOLUTIONS, INC., *Plaintiff*, <br><br> v. <br><br> ARCHTOP FIBER LLC, *Defendant*. | No. 1:24-cv-01515-MSN-LRV |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Archtop Fiber LLC ("Archtop")'s Motion to Dismiss. ECF 12. Defendant Archtop seeks dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. *Id.* at 1. Archtop also seeks dismissal under Fed. R. Civ. P. 12(b)(3) for improper venue. *Id.* Alternatively, Archtop seeks transfer of venue to the Northern District of New York. *Id.* For the reasons that follow, this Court will grant Defendant's motion to dismiss for lack of personal jurisdiction.

**I.    BACKGROUND**

    **A.    Factual Background[1]**

Plaintiff Teleqo Technical Solutions, Inc. ("Teleqo") is a Delaware corporation with its principal place of business in McLean, Virginia. ECF 4 ("Compl.") at ¶ 1. Teleqo operates in the mobile mapping industry, collecting geospatial data through vehicles equipped with sensor technologies and extracting assets from the data collected. *Id.* at ¶ 5. Defendant Archtop is a Delaware-registered limited liability company with its principal place of business in Kingston, New York. *Id.* at ¶ 2. Archtop is in the business of building fiber-optic infrastructure and providing

---

[1] The Court construes all relevant pleadings in the light more favorable to the plaintiff for purposes of this motion. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

phone and internet services. *Id.* at ¶ 6. As part of its business, Archtop installs fiber-optic cabling on utility poles owned by third parties. ECF 13 ("MTD") at 1-2. These installations require Archtop to complete a "pole attachment application" for each pole. *Id.* at 2. The pole attachment applications require, among other things, the pole's unique identifying number ("Pole Tag") which identifies the pole and communicates information about the pole's characteristics. *Id.*

It is undisputed that a third party introduced Teleqo and Archtop via email, leading to a remote meeting on March 16, 2022, between the parties' representatives to discuss the potential use of Teleqo's services in gathering utility pole data for Archtop's pole attachment applications. ECF 15 ("Opp.") at 3, n.2.; ECF 17 ("Rep.") at 4. However, the parties dispute who initiated the meeting. Teleqo claims that after the introduction, Archtop's president responded first and requested a phone conversation with Teleqo. Opp. at 3, n.2. In contrast, Archtop claims that the virtual meeting was arranged at the invitation of Teleqo's CEO. Rep. at 4, n.2. Following the virtual meeting, Archtop informed Teleqo that it did not currently require Teleqo's services but that it would reach out if its needs changed. MTD at 2.

Then in 2023, Archtop contacted Teleqo "to determine whether Teleqo Tech could provide it with mobile mapping services related to its fiber-optic infrastructure project in Sand Lake, New York (the 'Sand Lake Project')." Compl. at ¶ 7. On October 12, 2023, the parties attended a virtual meeting to discuss the potential use of Teleqo's services. MTD at 3. Subsequently, on October 16, 2023, Teleqo provided Archtop with a sample "data dictionary" as part of its pre-planning process, describing the data and assets Teleqo would extract. Compl. at ¶ 8. The creation of the data dictionary and the rest of the pre-planning process, which involved routing, equipment organization, travel planning, and other project logistics, was conducted exclusively by Teleqo personnel located in Virginia. Rep. at 4. On November 30, 2023, Teleqo representatives traveled

to Archtop's offices in Kingston, New York to further discuss the potential use of Teleqo's services. MTD at 3. Ultimately, on December 16, 2023, the parties entered into a contract for the Sand Lake Project. Opp. at 4. Following this initial contract, the parties also entered into a contract on four additional projects in Woodstock, New York; Stockbridge, Massachusetts; Pittsfield, Massachusetts; and New Scotland, New York. Compl. at ¶¶ 34-37.

Teleqo's work on these projects comprised four stages: data collection, data processing, data extraction, and data delivery. Compl. at ¶ 9. The data collection took place in the field in New York and Massachusetts. *Id.* The data processing, involving the conversion of raw collected data into a workable format, was handled exclusively in Virginia. *Id.* The data extraction, requiring in-depth analysis of the collected data, was carried out in Virginia, Wisconsin, and Pennsylvania. Opp. at 7. The final stage, data delivery, involved sending processed data to Archtop from Virginia either by email or by uploading the files to a file transfer server or cloud-based data center, both located in Virginia and accessible to Archtop. *Id.* at ¶ 8.

About six months into the parties' contractual relationship, on June 8, 2024, Archtop instructed Teleqo to execute a full stop all project work. Compl. at ¶ 53; Opp. at 9. Teleqo claims that "[t]his cease work order was unjustified and a beach of the parties' agreements, as it was based entirely on missing pole tag data, which Archtop had committed to provide." Compl. at ¶ 53. Although the parties met to discuss the cease work order, Teleqo contends that Archtop has since refused to fulfil its contractual payment obligations. *Id.* at ¶¶ 56, 59.

**B.     Procedural History**

On August 29, 2024, Teleqo filed suit against Archtop for breach of contract. Compl. at ¶¶ 64-69. On September 25, 2024, Archtop moved to dismiss for lack of jurisdiction, arguing that this Court lacks personal jurisdiction over Archtop under Fed. R. Civ. P. 12(b)(2) and, alternatively,

3

that venue is improper under Fed. R. Civ. P. 12(b)(3). MTD at 1. Alternatively, Archtop moved to transfer this case to the Northern District of New York. *Id.*

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2) this Court may dismiss a claim for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The Plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 609 (E.D. Va. 2002). The Court must construe all relevant pleading allegations—in both the complaint and any affidavit and exhibits—in the light most favorable to the plaintiff. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

There is a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. First, a court must look to the state's long-arm statute "to assess whether the plaintiff's cause of action against the defendant and the nature of the defendant's contacts with Virginia fall within the law's scope." *Verizon Online*, 203 F.Supp.2d at 609. Then, the court must determine whether the state's long-arm statute comports with the Due Process Clause of the 14th Amendment. *Id.* Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process and the two-prong test therefore collapses into a single inquiry. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).

Due process authorizes courts to exercise personal jurisdiction only if the defendant has certain "minimum contacts" with the forum state. *Id.* The minimum contacts analysis must focus "on the relationship among the defendant, the forum, and the litigation." *UMG Recordings*, 963 F.3d at 351. The Fourth Circuit considers three factors when determining whether a court has personal jurisdiction over a nonresident defendant: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether

4

the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* at 351–52.

### III.   ANALYSIS

Plaintiff has not demonstrated through its pleadings that Archtop purposefully availed itself of the privilege of conducting activities within the Commonwealth of Virginia. Consequently, Plaintiff fails to satisfy the first prong of the Fourth Circuit's test. As such, this Court will dismiss Plaintiff's claims.

In considering whether a defendant has or has not purposely availed itself of the forum court's jurisdiction, the Fourth Circuit analyzes the following non-exhaustive factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC v. Associated Broadcasting Co P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018).

Plaintiff argues that Archtop purposefully availed itself of the privileges of contracting and conducting business in Virginia. Opp. at 11. Plaintiff points principally to Archtop's "contract with a forum state resident," and contends that such a contract is sufficient to establish purposeful availment where "the defendant 'initiated contact with the plaintiff in the forum state,' 'entered into contracts' with plaintiff 'by virtue of action taken' in the forum state,' and 'carried on a continuing relationship' with the plaintiff in the forum state." *Id.* (quoting *English & Smith v. Metzger*, 901 F.2d 36, 39-40 (4th Cir. 1990)). Plaintiff argues that because Archtop initiated the

5

contractual relationship and Teleqo performed a majority of the contract in Virginia, Archtop's activities in Virginia were substantial enough to establish purposeful availment. Opp. at 12-13.

But Teleqo was ultimately hired by a New York based company (Archtop) to gather pole tag data in New York and Massachusetts. *See* MTD at 9-10. There was no contemplated work to be completed in Virginia. Teleqo may have done some work in Virginia, but that was their choice and not a requirement of Archtop or the contract. That incidental connection to Virginia is not sufficient to establish personal jurisdiction. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (finding no personal jurisdiction over defendant despite forum state choice-of-law clause when defendant employed no officers or agents in the state, owned no property in the state, conducted no business in the state, and had no contact with any entity in the state aside from the plaintiff). Nor does the contract between the parties—which again did not contemplate work in Virginia—change this analysis. *See id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). The Supreme Court made clear that the personal jurisdiction test is not "mechanical" but turns on factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of detailing." *Burger King*, 471 U.S. at 479. Those factors do not establish personal jurisdiction here. Looking beyond the complaint to relevant affidavits and declarations,[2] it appears that Teleqo initiated contact with Archtop back in 2022.[3] And unlike the contemplated twenty-year franchise in *Burger King*, there is no indication here that the parties intended such a long-term obligation. Rep. at 4, n.2. In reality, their relationship lasted barely six months. *Id.* at 4. Because the only connection to Virginia in this case

---

[2] A review of such documents is appropriate on a motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).
[3] Although Archtop later reached into Virginia to "initiate" the business relationship, it was Teleqo that first reached into New York to "solicit" the business. Regardless, this fact alone is insufficient to establish purposeful availment.

6

is Teleqo's decision to maintain offices and conduct some of its work in the state, this Court cannot exercise personal jurisdiction over Archtop.[4]

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Rule 12(b)(2) Motion (ECF 12) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's Complaint (ECF 4) is **DISMISSED**.

It is **SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

November 13, 2024
Alexandria, Virginia

---

[4] Because this Court has determined that it does not have personal jurisdiction, the Court need not reach the arguments relating to venue.